**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **JASON EISENHAUER** | |
| **Plaintiff,** | |
| **v.** | **Case No.** |
| **LG CHEM AMERICA, INC.** | **JURY TRIAL DEMANDED** |
| **and** | |
| **LG CHEM, LTD.** | |

## COMPLAINT

Plaintiff Jason Eisenhauer, by and through his attorneys of record, and for his complaint against LG Chem America, Inc. ("LG Chem America") and LG Chem, Ltd. ("LG Korea") (collectively "LG") makes the following allegations:

### PARTIES

1. Plaintiff Jason Eisenhauer is and was a resident of St. Louis, Missouri.

2. Defendant LG Chem America, Inc. is a Delaware corporation with its principle place of business located in Atlanta, Fulton County, Georgia. At all times relevant hereto, LG Chem America was a distributor and/or seller of various LG products, including but not limited to lithium-ion batteries.

3. Defendant LG Chem Ltd. ("LG Korea") is a multi-national chemical-based company founded in Korea in 1947. It boasts of leading the global market with its manufacture and sale of lithium-ion batteries, such as the cylindrical 18650 batteries at issue in this case.

4.      Although LG Korea reportedly does not maintain any physical presence in the United States, it does extensive business in Georgia through LG Chem America, Inc. Through its Georgia-based subsidiary, LG Korea knowingly and purposefully has flooded the U.S. market with lithium ion batteries, including cylindrical 18650 lithium ion batteries. It has done so through a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products across the United States.

5.      LG Korea documents characterize the business activities of one such subsidiary, Defendant LG Chem America, as "sales and trading" of LG Korea's products in the United States.

6.      LG Chem America is a wholly owned subsidiary of LG Korea and has extensive operations in both Georgia and California.

7.      LG Korea created LG Chem America for the specific purpose of "sales and trading" of LG Chem Korea products in the United States.

8.      LG Korea and LG Chem America represent themselves as one and the same in the marketing of their products.

9.      LG Korea ships lithium-ion batteries and other products directly into the United States from Korea, and LG Chem America—in its role as shipper and distributor—fulfills delivery and distribution of said items both in and throughout the United States. LG Chem America takes possession of lithium-ion batteries in the United States and systematically sells, ships, and/or distributes them throughout the United States, including Georgia.

10.     LG Korea and LG Chem America have a yearly revenue of over $278 million attributable to batteries sold or imported into the United States and $2.4 billion worldwide.

2

11.     LG Korea exercises pervasive and tight control over the sales and trading activities of its subsidiary, LG Chem America, and LG Chem America was created solely for the purpose of acting as an instrumentality for which LG Korea could sell and distribute its products, including batteries, in the United States.

12.     LG Korea designed, manufactured, distributed, sold, and/or otherwise placed the cylindrical lithium ion battery that injured Plaintiff ("the subject battery") into the stream of commerce.

13.     The instant case involves the explosion of a lithium ion battery and other similar/identical 18650 lithium-ion batteries, was advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of the LG Defendants and one or more distributors and/or retailers who sell and distribute LG products, including the subject battery and similar batteries to consumers.

14.     The LG Defendants sell lithium-ion batteries to Chinese companies known to the LG Defendants to be distributors of e-cigarette and personal vaping products, including 18650 batteries.

15.     The LG Defendants know the Chinese entities to whom they sell their products, including lithium-ion 18650 batteries, distribute said products to e-cigarette and vaping retailers, wholesalers, and distributors in the United States and specifically into Georgia.

16.     LG Chem America is registered to do business in seventeen (17) states, it manages customer accounts, provides marketing support, provides technical support, and conducts external technology research, all on behalf of its corporate parent and product manufacturer, LG Korea.

3

## VENUE

17.     Venue is proper in this Court because Defendant LG Chem America, Inc. is headquartered and has its principal place of business in this district.

## JURISDICTION

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiff and the Defendants are diverse and the amount in controversy exceeds $75,000.00.

19.     This Court has personal jurisdiction over Defendant LG Chem America, Inc. because it is headquartered and has its principal place of business in this district.

20.     This Court has personal jurisdiction over Defendant LG Korea because it maintains purposeful, continuous, and systematic contacts with Georgia entities and the Georgia market, including but not limited to Defendant LG Chem America, Inc., because its products are sold in and throughout Georgia. The regular course and scope of LG Korea's business involves shipping of huge quantities of its batteries, including batteries identical to the subject battery, into and throughout Georgia, and it has specifically shipped tens of thousands of Li-Ion batteries into Georgia. This lawsuit arises out of and relates to those specific contacts with Georgia, and the conduct and injuries alleged in this case are a result of those contacts with Georgia.

4

21.     In addition, LG Korea maintains an active and interactive website where it can exchange information with Georgia residents at https://www.lgchem.com/global/lg-chem-company, where Georgia residents can research and interact with the various divisions with LG Korea. Included within that website is the ability to email the division responsible for manufacturing, researching, designing, selling, and marketing the lithium-ion batteries. In order to inquire about those batteries, the user must consent to have their personal information collected by LG Korea, including their name, number, inquiry type, subject, content, and IP address and access location/date/time, which LG Korea then stores and maintains for at minimum one year. LG Korea promises that "A reply will be sent to the email address you entered. Please enter it correctly." Based on information and belief, large numbers of individuals and entities located in Georgia browsed the LG Korea website, obtaining information on the company and its products. Of those, at least a reasonable number made inquiries to LG Korea from Georgia about purchasing its products or with inquiries about those products, to which LG Korea guarantees that "a reply will be sent" – sending replies to Georgia customers and distributors and seeking to further distribute and sell its products to Georgia users.

22.     In addition, jurisdiction over LG Korea is in necessary in this Court because, despite LG Korea knowingly flooding the U.S. market with defective 18650 batteries (and profiting from each sale), and despite hundreds if not thousands of consumers having been injured by its lithium ion batteries, LG maintains that there is not a single jurisdiction in the United States of America in which it can be sued.

## FACTUAL ALLEGATIONS

### E-Cigarettes

23.     E-cigarettes, also known as e-cigs, vapes, vape pens, and mods (customizable, more powerful vaporizers) are battery operated devices that deliver nicotine through flavoring and other chemicals to users in the form of vapor instead of smoke.[1]  They were first patented in 2003 and have been available for sale in the United States since 2007.[2]

24.     E-cigarettes are designed to simulate the act of smoking traditional tobacco, allegedly with less of the toxic chemicals produced by the burning of tobacco leaves and other chemicals contained in traditional, combustible cigarettes.[3]  E-cigarettes offer doses of nicotine with a vaporized solution, often referred to as "juice," "e-liquid," or "pods," providing a physical sensation similar to tobacco smoke.

25.     Generally, electronic cigarettes operate the same way regardless of the model in that they typically consist of at least three (3) component parts: a tank, a battery that works to heat the juices or e-liquid contained in the tank, and an atomizer that converts the liquid into vapor that the user inhales.

26.     E-cigarettes differ from traditional cigarettes in a critical way:  the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component.     While both products may produce a similar physical sensation, e-cigarettes pose an additional danger—the battery-powered heating element, as well as the battery itself—that can and have caused explosions, fires, and serious injury.

---

[1] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.

[2] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017 available at https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf

[3] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.

6

27.     E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical device, requiring a lithium-ion battery of a similar shape.  When the device malfunctions or fails, the battery can be shot out like a bullet or rocket.[4]

28.     At least two deaths have been reported in relation to an exploding e-cigarette.[5]

29.     E-cigarettes have become increasingly popular. They have been marketed as smoking-cessation aids[6] and as a healthier alternative to traditional tobacco cigarettes. The selection of products has grown at an extremely rapid rate.[7]

30.     Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2012.  Industry experts predict the e-cigarette industry will become an $85 billion business within a decade and surpass the tobacco industry.[8]

---

[4] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[5] *See* https://www.washingtonpost.com/health/2019/02/05/vape-pen-kills-man-after-exploding-his-mouth/.
[6] *Id.*
[7] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.
[8] Clarke, T., *Reports of E-Cigarette Injury Jump Amid Rising Popularity, United States Data Show*, Reuters.com, April 17, 2012.

31.     Until recently, e-cigarette marketing has been unfettered and unregulated. Whereas tobacco advertisements have been banned on radio and television for more than 40 years, no such restrictions have been instituted in the e-cigarette arena.   Manufacturers, distributors, and sellers of e-cigarettes therefore reach a broader consumer base than the tobacco industry and have the freedom to utilize the same marketing tactics previously employed by big tobacco.   Namely, to tout the supposed health benefits of their products absent scientific and medical data to support such claims; to portray e-cigarette smoking as a harmless pastime on TV, radio, and in print; capitalize on individuals already addicted to nicotine; and/or encourage nicotine newcomers (mainly youths and young adults) to pick up the habit.

32.     In 2017, the United States Fire Administration characterized the "combination of an electronic cigarette and a lithium-ion battery" as a "new and unique hazard" because there is "no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette."[9]

### The LG Defendants, Their Sale of Lithium-Ion Batteries, and Knowledge That Said Batteries Were Used With E-Cigarettes

33.     LG Korea reportedly does not maintain any physical presence in the United States.  It has a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

34.     LG Korea documents characterize the business activities of one such subsidiary, Defendant LG Chem America, as "sales and trading" of LG Korea's products in the United States.

35.     Upon information and belief, LG Chem America is a wholly owned subsidiary of LG Korea, and has extensive operations in Georgia.

---

[9] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017.

36.     LG Korea created LG Chem America for the specific purpose of "sales and trading" of LG Chem Korea products in the United States. Additionally, upon information and belief, LG Chem America was involved in the design and specification of LG lithium-ion 18650 batteries to be sold in the United States.

37.     LG Korea is a global supplier of products and touts its global reach, stating LG "is literally the company leading the chemical industry in Korea. The company has built the global network for production, sales, and R&D not only in Korea but also in main bases across the world and has provided globally competitive products…LG Chem is committed to becoming a global company…"

38.     LG Korea also emphasizes it is the "only chemistry-based company among global battery cell manufacturers [which] has led the world lithium-ion battery market…positioned as a global leader…and has secured the battery production capacity as a global player."

39.     LG Korea sells its batteries worldwide, utilizing distributors across the globe, including its subsidiary, LG Chem America. This is particularly true in Georgia, where LG Chem ships lithium-ion batteries directly to its subsidiary and other Georgia entities. Specifically, LG Korea ships large quantities of lithium-ion batteries to LG Chem America and other distributors in Georgia. The batteries are then redistributed, sold, packaged, transported, or provided to end users in Georgia and across the United States for use.

40.     The regular course and scope of LG Korea's batteries involves the shipping of large quantities of its batteries, both the cylindrical lithium-ion battery at issue here as well as LG Korea's other energy storage products, into and throughout Georgia and beyond.

41.     Based on information and belief, during at least the years 2012 to the present, LG Korea supplied, sold, shipped, distributed and provided directly to consumers and distributors throughout the State of Georgia, thousands (if not millions) of its products, including cylindrical lithium-ion batteries, which were sold for use, and used, in Georgia.

42.     Based on information and belief, LG Korea marketed, advertised, targeted consumers, and promoted the sale of its various products, including lithium-ion batteries, to numerous consumers and distributors throughout Georgia. Upon information and belief, those distributors, and other distributors located throughout the United States and the world, in turn sold large quantities of products, including LG lithium-ion batteries to wholesalers and retailers located in Georgia for the direct sale to Georgia consumers, where said products were purchased by Georgia residents and used in this State.

43.     In addition to the authorized LG Korea batteries shipped directly to Georgia, LG Korea also engages, upon information and belief, in a grading process for the various batteries it manufacturers. Upon information and belief, those batteries that fail to achieve a sufficient grade or conform appropriately to standards are not discarded.

44.     Instead, in the interests of profit, LG Chem sells those inferior or nonconforming lithium-ion battery products to other distributors, with LG knowing full well they may be using those batteries for individual electronic or other uses-uses that may not be explicitly authorized, but are certainly permitted by LG Korea in the interest of maintaining its profitability.

45.     In addition, based upon information and belief, in the manufacturing process, LG Korea ends up with a significant quantity of batteries with cosmetic defects in the wrapper, without a wrapper at all, or with batteries with other types of cosmetic and other defects. Again, instead of discarding those batteries, LG Korea knowingly sells those substandard batteries to various distributors throughout the world to remove the cosmetically defective or missing wrapper, apply their own wrapping, and then sell those batteries for other uses. One of the principal locations to which LG Korea ships its substandard batteries is Shenzhen, China.

46.     Those batteries are then sold to consumers throughout the world, and readily and rapidly reach Georgia shores, all at the reasonable expectation or explicit knowledge of LG Korea. Based on these two avenues, LG Korea ultimately sells huge quantities of lithium-ion batteries that end up in the electronic cigarette market in Georgia, and end up in the hands of Georgia consumers, including upon information and belief, the battery at issue in this matter.

47.     Based on information and belief, LG' s marketing, advertising, sale, distribution network, and provision of batteries to Georgia resulted in the use of thousands, if not millions, of LG products, particularly cylindrical lithium-ion batteries, in the State of Georgia-and comprising one of LG' s primary distribution channels for its products.

48.     LG Korea and LG Chem America have a yearly revenue of over $278 million attributable to batteries sold or imported into the United States and $2.4 billion worldwide.

49.     LG Korea exercises pervasive and tight control over the sales and trading activities of its subsidiary, LG Chem America, and LG Chem America was created solely for the purpose of acting as an instrumentality through which LG Korea could sell and distribute its products, including batteries, in the United States.

50.     LG Korea designed, manufactured, distributed, sold, and/or otherwise placed the subject battery that injured Plaintiff into the stream of commerce.

51.     The instant case involves the explosion of a lithium ion battery. The subject battery, and other similar/identical 18650 lithium-ion batteries, were advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of the LG Defendants and one or more distributors and/or retailers who sell and distribute LG products, including the subject battery and similar batteries to consumers.

52.     LG Chem America is registered to do business in only seventeen (17) states, it manages customer accounts, provides marketing support, provides technical support, and conducts external technology research, all on behalf of its corporate parent and product manufacturer, LG Korea.

53.     Despite the significant profit LG Korea garners from its United States based business, it asserts it is not subject to the jurisdiction of any court (whether state or federal) in the United States.

54.     For at least the last six years, it has been well known in the electronic cigarette industry, and based upon information and belief, well known to LG, that its lithium-ion batteries were being used in connection with electronic cigarettes and were even *recommended* by multiple online sources for e-cig use.

55.     LG lithium-ion batteries can carry a catastrophic risk of explosion to end users. Indeed, even on the primary search engine used in LG' s home country, South Korea, there are *hundreds* of news articles detailing the explosion issues with electronic cigarette batteries such as LG Korea's 18650 battery (the type that exploded here).

12

56.     The first of these articles appear as early as February 2012 and detail a spate of explosions across the world, damaging and burning faces, mouths, hands, legs, and bodies. With respect to administrative action, the U.S. Fire Administration published a report in October 2014 detailing fires and explosions in electronic cigarettes dating back to 2009; the U.S. Dept of Transportation permanently banned e-cigs in checked baggage in 2016, and the FDA has been expressing concern for these dangerous products for years. Finally, based on information and belief, LG Korea has been named, or is about to be named, as a defendant in hundreds of electronic cigarette explosions across the country, where one of its batteries has caused catastrophic injuries to people across the U.S. and around the world.

57.     Despite Defendants' knowledge, LG batteries are widely, readily, and easily available at electronic cigarette retail stores throughout Georgia, as well as available for direct shipment online from Amazon, Alibaba, Walmart, and other online retailers. LG has long known, tolerated, and permitted this alternative use of its lithium-ion batteries, as it is a ready profit driver for LG Korea and LG Chem America. Only recently, with the spike in explosions of LG batteries—and resulting bad press—has LG taken any action to attempt to stem the tide of its batteries reaching Georgia shores, posting an insufficient "warning" to its website. And even then, the "warning" was, upon information and belief, only posted in 2019, and admits that "LG Chem has learned that some individual consumers purchase and use its cylindrical lithium-ion battery cells ... in e-cigarettes and Vape Products that incorporate replaceable and rechargeable individual Li-Ion Cells."

13

**Plaintiff's Injury**

58.     Prior to August 7, 2018, Plaintiff purchased the subject battery and a mod-type e-cigarette ("subject vape") from a retail store in Missouri.

59.     On August 7, 2018, Plaintiff Jason Eisenhauer was driving his car on the way to work in St. Louis County, Missouri.

60.     Mr. Eisenhauer had two 18650 batteries - subject battery and a second battery in his pocket.

61.     As he was driving, the subject battery exploded.

62.     Mr. Eisenhauer exited his vehicle, took off his pants, and put out the fire.

63.     As a result of the explosion, Mr. Eisenhauer suffered severe burn injuries.

64.     Mr. Eisenhauer went to Mercy Hospital in St. Louis where he stayed overnight for his burn injuries.

**COUNT I**
**STRICT PRODUCTS LIABILITY**

65.     Plaintiff incorporates the above allegations as though fully set forth herein.

66.     At all times mention herein, Defendants were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, warranting, wholesaling, supplying, and/or marketing lithium-ion batteries such as the subject battery throughout the United States by means of interstate commerce.

67.     The subject battery was designed, manufactured, assembled, inspected, marketed, sold, and otherwise distributed by Defendants in the regular course of their business.

68.     At the time of Plaintiff's injuries, the subject battery was in a defective condition and was unreasonably dangerous when put to a reasonably anticipated use in that:

a. The subject battery had an unreasonably propensity to heat, catch fire, and explode during normal and foreseeable conditions;

b. The subject battery had an unreasonable propensity to explode during normal and foreseeable conditions;

c. The subject battery were not reasonably safe in their design, resulting in excessive overheating of the batteries, causing it to catch fire and explode in the course of intended use and in the course of non-use;

d. LG knowingly failed to adequately test the subject battery before and during the design, production, and sale of the subject battery to the public and/or knowingly placed the dangerously designed lithium ion batteries into the stream of commerce;

e. The subject battery failed to have adequate, if any, short-circuit protection;

f. The subject battery had inadequate, if any overload protection;

g. The subject battery had inadequate, if any, voltage control protection;

h. The subject battery were prone to thermal runaway;

i. LG failed to adequately warn of the hazards presented by the subject battery, including but not limited to the risk of explosion;

j. LG failed to warn, instruct, or direct users not to place the subject battery in their pocket with other contents; and

k. Such further defects as the discovery and evidence will reveal.

69. The defective and unreasonably dangerous condition of the subject battery existed at the time they were designed, manufactured, sold, and/or distributed by Defendants.

15

70.    At the time Defendants sold the subject battery, it knew of their defective condition.  Specifically, Defendants had actual knowledge that its lithium ion batteries could explode under normal and foreseeable circumstances, and even during nonuse, and were unreasonably dangerous in the hands of the individual consumer.

71.    At the time of the incident, the subject battery was in substantially the same condition as when designed, manufactured, distributed, or sold.

72.    The defects as described above directly caused or contributed to cause Plaintiff's injuries.

73.    As a direct and proximate result of the defective and unreasonably dangerous condition of the subject battery, Plaintiff sustained severe, disabling, and permanent personal injuries.  He has undergone multiple surgical procedures and has suffered and will continue to suffer severe physical and emotional pain and mental anguish.

74.    As a direct and proximate result of the defective and unreasonably dangerous condition of the subject battery, Plaintiff has become indebted for extensive reasonable and necessary medical care and treatment and will continue to incur further expenses in the future.

75.    As a direct and proximate result of the defective and unreasonably dangerous condition of the subject battery, Plaintiff's ability to labor and earn wages and income has been and will continue to be lost, diminished, and/or impaired.

76.    The aforesaid misconduct of Defendants constituted a gross and conscious indifference to and a willful, wanton, and reckless disregard for the safety of the general public, including Plaintiff, thus justifying and requiring punitive damages to be assessed against Defendant in a sum that will deter Defendant and others from such misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00), for punitive damages, costs herein incurred, prejudgment interest, post judgment interest, and for such other and further relief as may be just and proper.

## COUNT II
## NEGLIGENCE

77.     Plaintiff incorporates the above allegations as though fully set forth herein.

78.     Defendants had a duty to exercise reasonable care in designing, manufacturing, marketing, supplying, selling, leasing, or otherwise distributing and placing lithium ion batteries in the stream of commerce, including the subject battery at issue in this lawsuit.

79.     Defendants designed, manufactured, assembled, sold, and distributed the subject battery in the regular course of its business.

80.     Defendants failed to exercise ordinary care thereby breaching it duty to Plaintiff and to others in one or more of the following ways:

> a. Defendants negligently and carelessly designed, manufactured, marketed, distributed, and/or sold defectively designed unreasonably dangerous lithium ion batteries;

> b. Defendants negligently and carelessly failed to design the subject battery such that it would not heat, catch fire, and explode during normal and foreseeable use and non-use;

> c. Defendants negligently and carelessly failed to adequately test the subject battery before and during the design, production, and sale of the subject battery to the public and/or negligently and carelessly placed the dangerously designed lithium ion batteries into the stream of commerce;

17

d. Defendants negligently and carelessly designed, manufactured, and sold lithium ion batteries that failed to have adequate, if any, short-circuit protection;

e. Defendants negligently and carelessly designed, manufactured, and sold lithium batteries in the subject vape that had inadequate, if any, overload protection;

f. Defendants negligently and carelessly failed to implement adequate, if any, voltage control system in the subject battery;

g. Defendants negligently and carelessly designed, manufactured, and sold lithium ion batteries prone to thermal runaway;

h. Defendants negligently and carelessly failed to adequately warn of the hazards presented by the subject battery, including but not limited to the risk of fire and explosion;

i. Defendants negligently and carelessly failed to warn, instruct, or direct users not to place the subject battery in their pocket with other contents;

j. Defendants negligently and carelessly sold subject battery without restriction as to how it could be used or sold;

k. Defendants negligently and carelessly failed to institute or maintain adequate policies and procedures for monitoring the safety performance of the lithium ion batteries, including the subject battery, it placed into the stream of commerce;

l. Defendants negligently and carelessly failed to monitor the safety performance of the of the lithium ion batteries, including the subject battery, it placed into the stream of commerce;

m. Defendants negligently and carelessly failed to manage their supply chain concerning 18650 lithium ion batteries, allowing millions of defective 18650 batteries to be leaked and sole into the consumer market place;

n. Defendants knowingly allowed lithium ion batteries, that it knew could explode if used by consumers, to be placed in the control of authorized and non-authorized distributors who then sold the batteries for consumers;

o. Defendants authorized and allowed distributors to sell the subject battery for an unintended purpose;

p. Defendants negligently and carelessly failed to take corrective action, including but not limited to recalls to eliminate the hazard, guard against the hazard, and/or warn Plaintiff and the public of the danger of potential explosion of lithium ion batteries, including the subject battery; and

q. Such further negligence as discovery and the evidence will reveal.

81.    Defendants knew or reasonably should have known that death or severe bodily injury was substantially likely to occur as a result of its acts and omissions as described above.

82.    The conduct as described above directly caused or contributed to cause Plaintiff Plaintiff's injuries.

83.    As a direct and proximate result of the negligent acts and/or omissions described above, Plaintiff sustained severe, disabling, and permanent personal injuries.  He has undergone multiple surgical procedures and has suffered and will continue to suffer severe physical and emotional pain and mental anguish.

84.     As a direct and proximate result of the negligent acts and/or omissions described above, Plaintiff has become indebted for extensive reasonable and necessary medical care and treatment and will continue to incur further expenses in the future.

85.     As a direct and proximate result of the negligent acts and/or omissions described above, Plaintiff's ability to labor and earn wages and income has been and will continue to be lost, diminished, and/or impaired.

86.     The aforesaid misconduct of Defendants constituted a gross and conscious indifference to and a willful, wanton, and reckless disregard for the safety of the general public, including Plaintiff and showed an entire want of care raising the presumption of conscious indifference to the consequences, thus justifying and requiring punitive damages to be assessed against Defendants in a sum that will deter Defendants and others from such misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00), for punitive damages, costs herein incurred, prejudgment interest, post judgment interest, and for such other and further relief as may be just and proper.

## COUNT III
## NEGLIGENT PERFORMANCE OF UNDERTAKING TO RENDER SERVICES

87.     Plaintiff incorporates the above allegations as though fully set forth herein.

88.     Restatement (Second) of Torts § 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking

89.     Defendants knowingly allowed millions of LG batteries to enter the stream of commerce for consumer use, despite actual knowledge that such products posed a serious risk of harm if used by individual consumers.

90.     After becoming aware of the risks, Defendants undertook to render services to maintain its supply chain and warn consumers about the risks posed by their defective batteries in the following ways:

- a. Defendants issued a declaration of commitment to their customers in an attempt to restrict retailers from selling LG batteries to individual consumers, for any use;

- b. Defendants placed warning labels on the cells and posted warning information on their company website;

- c. Defendants began a public relations campaign in order to inform the public of the dangers in using their batteries with e-cigarettes;

- d. Defendants updated the language on the battery label with the intent to make the warning messages clearer;

21

e. Defendants issued warnings to certain vape shops in the United States in order to inform those shops that LG lithium ion batteries were not to be sold for e-cigarette use;

f. Defendants held meetings with the FDA to alert them about LG's knowledge of the situation regarding the use of LG batteries in e-cigarettes; and

g. Such further undertakings as discovery and evidence will reveal.

91. Defendants recognized that the actions described above were necessary to protect consumers, such as Plaintiff.

92. Defendants failed to exercise reasonable care in its undertaking to fix the supply chain or notify customers, retailers, and e-cigarette distributors of the danger that LG's lithium ion batteries posed. Instead, due to improper and profit motives, Defendants continued to acquiesce in the sale of its defective batteries to entities it knew, due to the risk of explosion, should not be selling them.

93. Plaintiff relied on Defendants' undertaking to control its supply chain and warn upstream entities when purchasing and utilizing the subject battery.

94. As a result of this reliance, Plaintiff suffered serious physical harm.

95. As a direct and proximate result of the acts and/or omissions described above, Plaintiff Jason Eisenhauer sustained severe, disabling, and permanent personal injuries. He has undergone multiple surgical procedures and has suffered and will continue to suffer severe physical and emotional pain and mental anguish.

96. As a direct and proximate result of the negligent acts and/or omissions described above, Plaintiff has become indebted for extensive reasonable and necessary medical care and treatment and will continue to incur further expenses in the future.

97.     As a direct and proximate result of the negligent acts and/or omissions described above, Plaintiff's ability to labor and earn wages and income has been and will continue to be lost, diminished, and/or impaired.

98.     The aforesaid misconduct of Defendants constituted a gross and conscious indifference to and a willful, wanton, and reckless disregard for the safety of the general public, including Plaintiff, and showed an entire want of care raising the presumption of conscious indifference to the consequences thus justifying and requiring punitive damages to be assessed against Defendants under O.C.G.A. § 51-12-5.1 in a sum that will deter Defendants and others from such misconduct in the future.

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendants for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) in special and compensatory damages; for punitive damages; for costs herein incurred, prejudgment interest, post judgment interest, and for such other and further relief as may be just and proper.

## JURY DEMAND

PLAINTIFF DEMANDS A JURY TRIAL.


Dated: August 24, 2020                    Respectfully submitted,


David A. Sleppy
**CATHEY & STRAIN LLC**
PO Box 689
Cornelia, GA  30531
706-778-2601 (telephone)
706-776-2899 (facsimile)
dsleppy@catheyandstrain.com

23

John G. Simon, #35231MO
*(To be admitted pro hac vice)*
John M. Simon #68393MO
*(To be admitted pro hac vice)*
**THE SIMON LAW FIRM**
800 Market Street, Suite 1700
Saint Louis, Missouri 63101
(314) 241-2929
(314) 241-2029 (FAX)
jsimon@simonlawpc.com
jmsimon@simonlawpc.com

*Attorneys for Plaintiff*